

FILED

Feb 07 2025, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Vernon L. Eversole,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

February 7, 2025

Court of Appeals Case No.
24A-CR-864

Appeal from the Vigo Superior Court

The Honorable Michael J. Lewis, Judge

Trial Court Cause No.
84D06-2010-MR-3657

---

**Opinion by Judge Mathias**
Judge Kenworthy concurs.
Judge Brown dissents with a separate opinion.

**Mathias, Judge.**

[1] Vernon L. Eversole appeals his convictions for murder and Level 2 felony attempted robbery.[1] Eversole raises a single issue for our review, namely, whether his two convictions are contrary to Indiana's protection against substantive double jeopardy. We agree with Eversole that his two convictions are contrary to law; we therefore affirm his conviction for murder and reverse his conviction for Level 2 felony attempted robbery.

## Facts and Procedural History

[2] In October 2017, David Carroll and George Thornton were roommates in Terre Haute. Carroll was dating Ashley Johnson at the time, and they used "drugs" together. Tr. Vol. 5, p. 78. Eversole was a friend of Johnson's and would also occasionally use drugs with Carroll and Johnson.

[3] In the early morning hours of October 27, Carroll and Johnson got into an argument, and Carroll told Johnson to "get [her] stuff" out of his house. *Id.* at 79. Johnson got her things and, a short time later, met up with Eversole. Johnson told Eversole that Carroll had thrown her shoes at her, and Eversole told Johnson to "[g]o back over there" with him. *Id.* at 82.

---

[1] Eversole does not appeal his conviction for Level 6 felony pointing a firearm, which conviction involved a different victim.

[4] Johnson and Eversole separately drove back to Carroll's house, and Eversole pulled into the driveway behind Johnson. Johnson got Carroll to open his garage door; as Carroll did so, Eversole "came up the side of the house and ran in the garage." *Id.* at 83. Eversole was wearing a mask and holding a gun.

[5] Carroll fled into his house, leaving a friend, Wayne Stillman, in the garage with Eversole. Eversole pointed his gun at Stillman and asked where the "dope" was. *Id.* at 84. Eversole then realized that Stillman was not Carroll and that Carroll had gone into the house, and Eversole pursued Carroll. Eversole then shot Carroll inside the house and fled the scene. Thornton was also inside the house and saw Carroll running into the bathroom with a gunshot wound. By the time Thornton reached the bathroom, Carroll had died.

[6] The State charged Eversole in relevant part with murder and Level 2 felony attempted robbery. In particular, the amended charging information stated as follows:

### COUNT 1: [MURDER]

[O]n or about October 27, 2017[,] . . . Eversole did knowingly or intentionally kill another human being, to wit: David Carroll . . . .

* * *

### COUNT 3: [ATTEMPTED ROBBERY]

> [O]n or about October 27, 2017[,] . . . Eversole . . . knowingly or intentionally attempted to take property from another person or from the presence of another person, to wit: David Carroll, *by using or threatening the use of force or by putting David Carroll in fear*, and . . . Eversole engaged in conduct that constituted a substantial step toward commission of the crime of robbery, to wit: *displayed a handgun and/or demanded drugs and/or money and/or pursued David Carroll as he ran away and/or fired a handgun at David Carroll* . . . .

Appellant's App. Vol. 2, p. 221 (bold font removed; emphases added).

[7] Following a bifurcated trial, a jury found Eversole guilty of both of those offenses. The trial court entered its judgment of conviction and sentenced Eversole to concurrent sentences. This appeal ensued.

## Discussion and Decision

[8] On appeal, Eversole contends that the trial court violated his substantive double jeopardy rights when it entered the judgment of conviction against him for both murder and Level 2 felony attempted robbery. We review such questions de novo. *A.W. v. State*, 229 N.E.3d 1060, 1064 (Ind. 2024).

[9] Indiana's protection against substantive double jeopardy prohibits "multiple convictions for the same offense in a single proceeding." *Id.* at 1066. To determine if a substantive double jeopardy violation has occurred, we apply a "three-part test based on statutory sources . . . ." *Id.* The first step is to look to the statutory language of the offenses at issue; if that language "clearly permits multiple punishments," then "there is no violation of substantive double

jeopardy." *Id.* (quotation marks omitted). Here, Eversole and the State agree that the first step is not dispositive, and so we proceed to the second step.

[10] Under the second step, as clarified by our Supreme Court in *A.W.*, we look to the face of the charging information to discern if the factual bases identified for the charges implicate our statutory definitions of an "included offense." *Id.* In particular, the Indiana Code defines an included offense as an offense that:

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind. Code § 35-31.5-2-168 (2017). As our Supreme Court has further clarified, an offense is an included offense where the charging information states that the "means used" to commit the alleged greater offense "include all of the elements

of the alleged lesser included offense."[2] *A.W.*, 229 N.E.3d at 1067 (quotation marks omitted).

[11] This step of our substantive double jeopardy analysis creates a risk of "an asymmetrical benefit to the State" because a prosecutor may "unilaterally decide how much" information "to include (or not include) in the charging instrument, which could decisively determine the outcome of a double jeopardy claim." *Id.* at 1069 (emphasis omitted). Thus, to eliminate that asymmetry, our Supreme Court requires that, "where ambiguities exist in a charging instrument about whether one offense is factually included in another, courts must construe those ambiguities in the defendant's favor[] and thus find a presumptive double jeopardy violation at Step 2." *Id.*

[12] Here, aside from names and dates, the face of the State's charging information against Eversole on the murder charge simply tracks the statutory language for the offense. Appellant's App. Vol. 2, p. 221. The face of the charging information for the Level 2 felony attempted robbery charge identified a series of alternative factual predicates, any one of which may have in fact been the means used to commit that offense. Those factual predicates included "the use of force" by Eversole and having "fired a handgun at David Carroll." Appellant's App. Vol. 2, p. 31. The means used, on its face and when compared

---

[2] Our Supreme Court's precedent does not require that the "greater offense" be the offense with the greater penalty; rather, our Supreme Court says simply to look to which offense is "alleged" by the appellant to have been included in the other offense. *A.W.*, 229 N.E.3d at 1067. And, here, Eversole alleges that the murder allegation was included within the Level 2 felony allegation of attempted robbery.

with the lack of detail included in the murder allegation, does not preclude any of the elements of the alleged murder. That is, one cannot tell from the face of the charging instrument whether the means used to commit the attempted robbery was necessarily something other than the murder. Accordingly, the manner in which the State drafted the information between those two offenses created a rebuttable presumption of a substantive double jeopardy violation. *See A.W.*, 229 N.E.3d at 1069.

[13] Still, in its brief on appeal, the State asserts that there is no presumptive double jeopardy violation at this step based on our Court's opinion in *Kerner v. State*, 178 N.E.3d 1215 (Ind. Ct. App 2021), *trans. denied*. This Court decided *Kerner* after our Supreme Court's opinion in *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020), but before our Supreme Court's clarifying opinion in *A.W.*, and our analysis was premised on a point that our Supreme Court clarified in *A.W.* In particular, in *Kerner*, a panel of our Court held that the face of the charging information did not demonstrate a substantive double jeopardy violation between murder and attempted robbery because each offense contained statutory elements not present in the other offense. *Kerner*, 178 N.E.3d at 1231. But *A.W.* has now made clear that that is not the correct analysis; the correct analysis, as relevant here, instead considers the face of the charging instrument to determine whether the alleged included offense's elements are within the means used for the commission of the alleged greater offense. 229 N.E.3d at 1067. Thus, the State's reliance on *Kerner* is misplaced, and we proceed to Step 3.

[14] Step 3 of our substantive double jeopardy analysis gives the State the opportunity to rebut the presumptive double jeopardy violation established by the appellant in Step 2. To do so, "the State must demonstrate that it made clear to the fact-finder at trial that the apparently included charge was supported by independent evidence such that the State made a 'distinction between what would otherwise be two of the same offenses.'" *Ratliff v. State*, 242 N.E.3d 1070, 1078-79 (Ind. Ct. App. 2024) (quoting *A.W.*, 229 N.E.3d at 1071), *trans. denied*. However, if the State's evidence at trial "shows only a single continuous crime, and one statutory offense is included in the other," the State may not obtain cumulative convictions. *Id.* at 1079 (quotation marks and brackets omitted). The State makes no argument on appeal that it is able to satisfy the requirements of Step 3. *See* Ind. Appellate Rule 46(A)(8)(a). Accordingly, the State failed to rebut the presumptive double jeopardy violation.

[15] For all of these reasons, Eversole has established that the trial court violated his substantive double jeopardy rights when the court entered its judgment of conviction for both murder and Level 2 felony attempted robbery. As for the relief to which Eversole is entitled, we agree with the State that the proper remedy is to vacate the conviction with the lesser penalty, *i.e.*, Eversole's conviction for Level 2 felony attempted robbery. *Cf. Wadle*, 151 N.E.3d at 256 ("To remedy [the] conviction for both offenses, . . . we accept the State's proposal of vacating" the offense with the lesser penalty). With one of the two convictions vacated, there is no longer a double jeopardy violation. *See id.* And, as the trial court ordered Eversole's sentence on the Level 2 felony attempted

robbery conviction to run concurrently with his greater sentence on the murder conviction, Eversole's aggregate sentence remains unchanged.

## Conclusion

[16] We affirm Eversole's conviction for murder and reverse his conviction for Level 2 felony attempted robbery.

[17] Affirmed in part and reversed in part.


Kenworthy, J., concurs.
Brown, J., dissents with a separate opinion.

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana

**Judge Brown, dissenting.**

[18] I respectfully dissent from the majority's decision. Initially, I note that Eversole's conduct that resulted in the current charges occurred in October 2017. Although both parties cite *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020), and *A.W. v. State*, 229 N.E.3d 1060, 1076 (Ind. 2024), which discussed *Wadle*, and assert that these cases apply, a split exists on this Court as to whether *Wadle* applies retroactively. *Contrast Hessler v. State*, 213 N.E.3d 511, 525 (Ind. Ct. App. 2023) ("Hessler's case was far from final when *Wadle* was adopted, and therefore *Wadle* controls."), *trans. denied*; and *Sorgdrager v. State*, 208 N.E.3d 646, 650-652 (Ind. Ct. App. 2023) (holding that the *Wadle* analysis applied to a double jeopardy argument stemming from offenses and charges that occurred prior to *Wadle* being handed down and convictions entered after *Wadle* was handed down), *trans. denied*; *with Banks v. State*, 228 N.E.3d 528, 534 (Ind. Ct. App. 2024) ("Desmond next contends his convictions for the murder and Level 2 felony robbery of Marcel constitute double jeopardy under *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020), because the robbery was enhanced to a Level 2 felony 'due to the same serious bodily injury that formed the basis' of the murder. The State says there is no double-jeopardy violation under *Wadle*. These offenses occurred in February 2020, before *Wadle* was decided. Under pre-*Wadle* law, this was a clear double-jeopardy violation. Desmond is entitled to the benefit of the law that was in effect when he committed the offenses.") (citations omitted);

and *Hessler*, 213 N.E.3d at 530 (Vaidik, J., concurring in part and dissenting in part) (asserting that *Wadle* could not be applied retroactively). *See also A.W. v. State*, 229 N.E.3d 1060, 1076 (Ind. 2024) (Goff, J., concurring) ("Last year, in *Hessler v. State*, a Court of Appeals panel split over whether *Wadle* applies retroactively or not. 213 N.E.3d 511, 525 (Ind. Ct. App. 2023); *id.* at 528 (Vaidik, J., concurring in part and dissenting in part). Parties will soon be litigating and appealing the issue of whether *Wadle* or *A.W.* applies to their case.").

[19] I also note that this Court split in its early decisions after *Wadle* was handed down on the issue of whether *Wadle* preserved common law double jeopardy claims. In *Morales v. State*, this Court held:

> The Indiana Supreme Court ruled decades ago that enhancement of one offense based on the same act used to convict the defendant of a second offense violates common law double jeopardy principles. *See, e.g.*, *Kingery v. State*, 659 N.E.2d 490, 496 (Ind. 1995)[, *reh'g denied*]; *Moore v. State*, 652 N.E.2d 53, 60 (Ind. 1995)[, *reh'g denied*]. But those decisions predate the Indiana Supreme Court's decision in *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020), which dramatically altered our substantive double jeopardy analysis.
>
> Morales suggests *Wadle* preserved common law double jeopardy claims. Panels of this Court have split on this issue. Some have found *Wadle* does not circumscribe all common law double jeopardy claims. *See, e.g.*, *Rowland v. State*, 155 N.E.3d 637, 640 (Ind. Ct. App. 2020) (noting *Wadle* left common law protection undisturbed); *Shepherd v. State*, 155 N.E.3d 1227, 1240 (Ind. Ct.

App. 2020) (ruling "*Wadle* left Indiana's common law double jeopardy jurisprudence intact"), *trans. denied.*

Others have found *Wadle* engulfed all double jeopardy claims, including those previously arising under the common law. *See, e.g.*, *Woodcock v. State*, 163 N.E.3d 863, 871-72 (Ind. Ct. App. 2021) (ruling "the common law rules are incorporated into the *Wadle* analysis and no longer exist independently")[, *trans. denied*]; *Jones v. State*, 159 N.E.3d 55, 61 (Ind. Ct. App. 2020) (stating *Wadle* "swallowed statutory and common law to create one unified framework for substantive double jeopardy claims"), *trans. denied*; *Diaz v. State*, 158 N.E.3d 363, 368 (Ind. Ct. App. 2020) (noting *Wadle* "did away with the 'old law' on claims of substantive double jeopardy, including . . . all common-law rules"); *Hill v. State*, 157 N.E.3d 1225, 1229 (Ind. Ct. App. 2020) (holding common law protections "did not survive *Wadle*"). We subscribe to the latter view for the reasons expressed in *Jones.* 159 N.E.3d at 61-62. Therefore, we analyze Morales's double jeopardy claim under the analysis required by *Wadle*.

165 N.E.3d 1002, 1006-1007 (Ind. Ct. App. 2021), *trans. denied*. Chief Judge Altice concurred and wrote:

> I write separately to acknowledge my prior concurrences in *Shepherd* and *Rowland*. Both cases came down within a month of the sea change in Indiana double jeopardy jurisprudence brought on by *Wadle*, and neither engaged in any analysis regarding whether *Wadle* left standing our common law double jeopardy principles. They merely stated that it did. *See Shepherd*, 155 N.E.3d at 1240 (noting that "it is our understanding that *Wadle* left Indiana's common law double jeopardy jurisprudence intact"); *Rowland*, 155 N.E.3d at 640 (stating that *Wadle* "appears to have left undisturbed" the common law rules).
>
> The subsequent line of cases, which all held otherwise, thoroughly analyzed the issue. I am persuaded by these cases,

particularly the detailed analysis in *Jones*, 159 N.E.3d at 61-62. Therefore, I now fully concur in the case at hand.

165 N.E.3d at 1010 (Altice, J., concurring). I agree that *Wadle* created one unified framework for substantive double jeopardy claims.

[20] With respect to the first step in *Wadle* of examining the statutory language to determine "[i]f the language of either statute clearly permits multiple punishment, either expressly or by unmistakable implication," *Wadle*, 151 N.E.3d at 248, the offense under Count I, murder, is governed by Ind. Code § 35-42-1-1, which provides that "[a] person who . . . knowingly or intentionally kills another human being . . . commits murder, a felony." The offense under Count III, attempted robbery resulting in serious bodily injury as a level 2 felony, is governed by Ind. Code § 35-41-5-1, which provides that "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime," and Ind. Code § 35-42-5-1, which provides that "a person who knowingly or intentionally takes property from another person or from the presence of another person . . . by using or threatening the use of force on any person . . . or . . . by putting any person in fear . . . commits robbery" and "the offense is . . . a Level 2 felony if it results in serious bodily injury to any person other than a defendant." Both parties agree that the statutes do not permit multiple punishments, and I cannot say that these statutes clearly permit multiple punishments. *See Kerner v. State*, 178 N.E.3d 1215, 1230 (Ind. Ct. App. 2021) (addressing the statutes governing

murder and attempted robbery and holding that "[b]oth the State and [defendant] correctly observe that none of these statutes permit multiple punishment either expressly or by unmistakable implication"), *trans. denied*.[3]

With no statutory language clearly permitting multiple convictions, the second step requires analyzing the offenses charged under our included-offense statutes. *See Wadle*, 151 N.E.3d at 254 ("With no statutory language clearly permitting multiple convictions, we now analyze the offenses charged under our included-offense statutes."). In addressing the second step, the *A.W.* Court stated that "'[i]f neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy' and the analysis ends—full stop." *A.W.*, 229 N.E.3d at 1067 (quoting *Wadle*, 151 N.E.3d at 248). The *A.W.* Court also held:

> *Wadle* does not define the meaning of "as charged." *See* 151 N.E.3d at 248. But this phrase makes more sense when analyzed at Step 2 within the factually included inquiry. These two concepts—as charged and factually included—should be treated as synonymous under *Wadle*: "the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense." *Id.* at 251

---

[3] In *Kerner*, Connor Kerner murdered Thomas Grill ("Thomas") and Molley Lanham ("Molley"), placed their bodies in Molley's car, set the car on fire in a remote location, attempted to cover up the crime, and took steps to permanently dispose of the charred remains. 178 N.E.3d at 1220. Kerner was convicted of two counts of murder, two counts of attempted robbery, and one count of arson. *Id.* The Court sua sponte raised the issue of whether the two attempted robbery convictions could stand. *Id.* at 1231. We concluded that Kerner could not be twice convicted for the attempted robbery of Thomas even though that offense resulted in serious bodily injury to both Thomas and Molley. *Id.* at 1231-1232. We ordered that the conviction for armed robbery of Molley be vacated and let stand the convictions for the murder of Thomas and the attempted robbery resulting in serious bodily injury to Thomas. *Id.* at 1236.

n.30 (quoting *Young* [*v. State*, 30 N.E.3d 719, 724 (Ind. 2015)] (cleaned up).

But that leaves us with another open question about the scope of the factually included inquiry at Step 2. We conclude that when assessing whether an offense is factually included, a court may examine only the **facts as presented on the face of the charging instrument**. This includes examining the "means used to commit the crime charged," which must "include all of the elements of the alleged lesser included offense." *Id*. Step 2 has core constraints: it does not authorize courts to probe other facts, such as evidence adduced from trial. *Cf. Phillips* [*v. State*, 174 N.E.3d 635, 647 (Ind. Ct. App. 2021)]. The factually included inquiry at this step is thus limited to facts on the face of the charging instrument. Otherwise, Step 2 would be another formulation of the now-retired *Richardson* approach. *Richardson*'s "either/or" regime was rejected because it gave courts **options**, which thus led to a selective application of "one test over another." *Wadle*, 151 N.E.3d at 241. Using their discretion, courts typically focused on actual evidence rather than the statutory elements, which led to a mélange of inconsistency.

* * * * *

Inconsistency breeds confusion, and confusion imperils the rule of law. In addressing this axiom, *Wadle* attempted to combat any potential legitimacy concerns by restoring order to Indiana's double jeopardy jurisprudence: it focused on the included-offense statute. *See* 151 N.E.3d at 235. *Wadle* thus assigned the "underlying" factual inquiry—which includes evidence from trial—to Step 3. *Id.* at 249. In other words, Step 3 is authorized, but only if one offense is included in the other under Step 2. *Wadle* contains clear stopping points in its analytical sequence: if Step 2 is **not** met, the analysis **ends**. We thus conclude that courts must confine their Step 2 analysis to (1) the included-offense statute (whether the offenses are "inherently" included),

and (2) the face of the charging instrument (whether the offenses "as charged" are factually included).

*Id.* at 1067-1068.[4]  The Court stated that "Step 2 does **not** allow courts to examine evidence adduced at trial, but only facts presented in the charging instrument, including the 'means used.'"  *Id.* at 1068-1069 (quoting *Wadle*, 151 N.E.3d at 251 n.30).  The Court held that "where ambiguities exist in a charging instrument about whether one offense is factually included in another, *see Harris* [*v. State*, 186 N.E.3d 604, 604 (Ind. Ct. App. 2022)], courts must construe those ambiguities in the defendant's favor, and thus find a presumptive double jeopardy violation at Step 2," and, "[i]n this event, the State can later rebut this presumption at Step 3."  *Id.* at 1069.

Ind. Code § 35-38-1-6 provides that "[w]henever: (1) a defendant is charged with an offense and an included offense in separate counts; and (2) the defendant is found guilty of both counts; judgment and sentence may not be

---

[4] The *A.W.* Court held that "[i]nconsistency breeds confusion, and confusion imperils the rule of law."  *A.W.*, 229 N.E.3d at 1068.  In the present case, which involves convictions for murder and attempted robbery resulting in serious bodily injury, the State cites *Wadle* and *A.W.* and asserts that double jeopardy did not prohibit Eversole's convictions.  *See* Appellee's Brief at 7-10.  However, in a recent similar appeal which also involved convictions for murder and attempted robbery resulting in serious bodily injury as a level 2 felony, the State discussed *Wadle* and *A.W.* and asserted that the defendant's convictions did violate the prohibition against double jeopardy.  *See* Appellee's Brief at 22-29 in Cause No. 24A-CR-952; *Macklin v. State*, No. 24A-CR-952, 2024 WL 5116374, at *1 n.5, *5-6 (Ind. Ct. App. Dec. 16, 2024) (confronting a similar issue and observing that the State conceded error).  Further, as more thoroughly discussed below, the State in the present appeal asserts that "if a double jeopardy violation were found, the appropriate remedy would be . . . to vacate the attempted robbery conviction . . . ."  Appellee's Brief at 10-11.  However, in its brief in *Macklin*, the State argued that this Court "should reduce, rather than vacate, [Macklin's] conviction" for attempted robbery.  Appellee's Brief at 29 in Cause No. 24A-CR-952.

entered against the defendant for the included offense." Ind. Code § 35-31.5-2-168 provides:

> "Included offense" means an offense that:
>
> > (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
> >
> > (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
> >
> > (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

[23] In *Kerner*, this Court discussed whether a defendant's convictions for murder and attempted robbery resulting in serious bodily injury satisfied any of the three subsections of Ind. Code § 35-31.5-2-168. *Kerner*, 178 N.E.3d at 1231. Specifically, the Court held:

> [The defendant's] convictions for murder and attempted robbery do not satisfy any of those three subsections. Subsection (1) is not applicable because each offense requires an element the other offense does not; murder requires a killing and attempted robbery requires a substantial step toward taking another's property by force. Subsection (2) is not applicable because neither offense constitutes an attempt to commit the other offense. And subsection (3) is not applicable because the offenses differ in more respects than just the degree of harm or culpability required; as just noted, each offense requires some conduct the other does not. Therefore, one is not inherently included in the other.

*Id.  See also Demby v. State*, 203 N.E.3d 1035, 1043-1044 (Ind. Ct. App. 2021) (discussing the application of *Wadle* and Ind. Code § 35-31.5-2-168 and holding: "[W]ith respect to the burglary conviction, Subsection (1) is not implicated here.  Neither aggravated battery nor attempted murder is established by the same material elements as burglary.  Burglary requires the breaking and entering of a structure, which neither of the other crimes requires.  While burglary under Indiana Code Section 35-43-2-1(2) requires that the breaking and entering *result* in bodily harm, it does not require that the defendant *intend* that result.  Both murder and aggravated battery, on the other hand, *do* require proof of mens rea relative to a particular harmful outcome: a knowing or intentional attempted killing and a knowing or intentional infliction of injury causing a substantial risk of death, respectively.  Thus, burglary is not inherently included in either attempted murder or aggravated battery, and vice versa.  Because the distinction between burglary and the other two crimes implicated here, aggravated battery and attempted murder, rests on the fact that each requires proof of a type of material element that the other does not . . . neither Subsection (2) nor Subsection (3) is applicable. . . .  Neither do these crimes differ in the sense that the distinction is one of degree of culpability under Indiana Code Section 35-31.5-2-168(3).  Rather, the intent elements for these three crimes are directed at separate ends entirely."), *trans. denied*.  Thus, murder is not inherently included in attempted robbery resulting in serious bodily injury.

[24]　Mindful of the modification in Step 2 as discussed in *A.W.*, in Count I, murder, the State alleged that "on or about October 27, 2017 in Vigo County, [Eversole] did knowingly or intentionally kill another human being, to wit: David Carroll." Appellant's Appendix Volume II at 31. In Count III, the State alleged that Eversole

> acting with the culpability required for commission of the crime of robbery, knowingly or intentionally attempted to take property from another person or from the presence of another person, to wit: David Carroll, by using or threatening the use of force or by putting David Carroll in fear, and [Eversole] engaged in conduct that constituted a substantial step toward commission of the crime of robbery, to wit: displayed a handgun and/or demanded drugs and/or money and/or pursued David Carroll as he ran away and/or fired a handgun at David Carroll, and said offense resulted in serious bodily injury to a person other than the defendant, to wit: resulted in a gunshot wound and/or the death of David Carroll . . . .

*Id.* I would conclude that murder is not a factually included offense or an included offense as charged. *See Kerner*, 178 N.E.3d at 1231 ("A review of the second amended information shows that the attempted robbery and murder counts are not included offenses as charged. The murder counts merely alleged [defendant] 'knowingly or intentionally kill[ed]' Thomas and Molley. The robbery counts alleged Kerner attempted to take property from Thomas resulting in serious bodily injury to Thomas or to Molley. Neither offense alleged all of the elements of the other and, therefore, are not included as charged.") (citations omitted).

[25] The majority relies upon language in *A.W.* which also gives me pause. However, I do not believe that the charging information for the attempted robbery, which merely alleged that the "said offense resulted in serious bodily injury to a person other than the defendant, to wit: resulted in a gunshot wound and/or the death of David Carroll," Appellant's Appendix Volume II at 31, falls under the *A.W.* Court's language that "where ambiguities exist in a charging instrument about whether one offense is factually included in another, courts must construe those ambiguities in the defendant's favor, and thus find a presumptive double jeopardy violation at Step 2." *A.W.*, 229 N.E.3d at 1069 (citation omitted).

[26] The *A.W.* Court held: "when assessing whether an offense is factually included, a court may examine only the **facts as presented on the face of the charging instrument**. This includes examining the 'means used to commit the crime charged,' which must 'include all of the elements of the alleged lesser included offense.'" *Id.* at 1067 (quoting *Wadle*, 151 N.E.3d at 251 n.30). If the "means used" in the attempted robbery must include all of the elements of the alleged lesser included offense, then we must examine whether the "means used" in the attempted robbery included all of the elements of the alleged lesser included offense of murder. I cannot say that the means used to commit the crime charged in attempted robbery resulting in serious bodily injury includes all of the elements of Eversole's alleged lesser included offense of murder. Specifically, I cannot say that the "means used" in the attempted robbery includes the element of a knowing or intentional killing for the murder. Neither

the statutes governing attempted robbery resulting in serious bodily injury as a level 2 felony nor the charging information for the attempted robbery require that Eversole knowingly or intentionally killed Carroll. Accordingly, I cannot conclude that murder is an included offense of attempted robbery either factually or as charged.[5] I also cannot say that attempted robbery is an included offense of murder. *See id.* ("'[i]f neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy' and the analysis ends—full stop") (quoting *Wadle*, 151 N.E.3d at 248).

[27] In addition to my conclusion that the means used to commit the crime charged in attempted robbery resulting in serious bodily injury does not include all of the elements of Eversole's alleged lesser included offense of murder, I also note that the discussion in *A.W.* involved offenses that clearly fit the definition of a lesser included offense. Specifically, the Court provided a case illustration involving level 5 felony intimidation with a deadly weapon and level 6 felony pointing a firearm at the same victim and stated that "[t]he Level 6 felony pointing a firearm was factually included because 'the means used to commit' the Level 5 felony intimidation with a deadly weapon—pointing a firearm—included 'all the elements' of the Level 6 pointing a firearm offense." *Id.* at

---

[5] Justice Goff wrote in his concurrence in *A.W.* that "[t]he new standard isn't really asking, then, whether one offense includes the other. It's asking whether the same evidence proves both offenses." *A.W.*, 229 N.E.3d at 1075 (Goff, J., concurring). This concerns me as well. However, I focus on the language by the majority in *A.W.* that, when assessing whether an offense is factually included, a court may examine only the facts as presented on the face of the charging instrument and "[t]his includes examining the 'means used to commit the crime charged,' *which must 'include all of the elements of the alleged lesser included offense.*'" *A.W.*, 229 N.E.3d at 1067 (emphasis added).

1069-1070. Further, the offenses at issue in *A.W.* involved possession of a machine gun and dangerous possession of a firearm. *Id.* at 1071. The Court observed that the first offense of possession of a machine gun "occurs when a 'person . . . knowingly or intentionally owns or possesses a machine gun,' a Level 5 felony." *Id.* (quoting Ind. Code § 35-47-5-8). It stated that the second offense of "dangerous possession of a firearm by a child" occurs "if he 'knowingly, intentionally, or recklessly possesses a firearm for any purpose other than a purpose described in Section 1[.]'" *Id.* at 1072 (quoting Ind. Code §§ 35-47-10-5(a)). The Court concluded that "dangerous possession is inherently included in machine gun possession." *Id.* It also held that "[o]n review of the face of the charging instrument, these offenses are also 'factually included' because they punish the same conduct as charged against A.W. in the juvenile delinquency proceeding." *Id.* The Court further held: "And the extent to which there is factual ambiguity about whether the 'means used' as presented in the charging instrument was the same weapon—a machine gun—to commit dangerous possession, the lesser-included offense, we construe any ambiguity in favor of A.W. Thus, the offenses are factually included here." *Id.* at 1073.

[28] Unlike the example given and the offenses at issue in *A.W.*, which involved one of the offenses clearly constituting a lesser included offense, I cannot conclude that the offense of murder, which requires a knowing or intentional killing, constitutes an included offense of attempted robbery resulting in serious bodily

injury, which does not require a knowing or intentional aspect with respect to the serious bodily injury.[6]

[29]    The *A.W.* Court also noted:

> The dissent below posited that the multiple adjudications "do not amount to multiple punishments for one act, as one requires proof that he had the status of a minor who could **not lawfully possess** the firearm." *A.W.*[ *v. State*, 192 N.E.3d 227, 233 (Ind. Ct. App. 2022)] (Bradford, C.J., concurring in part, dissenting in part) (emphasis added). We disagree. The statutory language— "for any purpose other than a [lawful] purpose"—is not an essential element the State was required to prove, but rather an **affirmative defense**, which was not raised by A.W. *See, e.g., Washington v. State*, 517 N.E.2d 77, 79 (Ind. 1987) (explaining possession of a license is an affirmative defense to the charge of carrying without a license). The State's charges essentially establish that **no one** can possess a machine gun for any lawful purpose; thus, **any juvenile** who is charged with machine gun possession could **always** be charged with dangerous possession.

*Id.* at 1072 n.15. I cannot say that the idea that the killing must be done knowingly or intentionally is anything other than an essential element of murder. *See generally Leonard v. State*, 80 N.E.3d 878, 885 (Ind. 2017) (holding that "the distinguishing element between knowing murder and reckless homicide is culpability").

---

[6] Justice Goff wrote that "[i]t is unclear how workable the new test will be" and, "[a]lthough it produces a commonsense outcome in the Court's own intimidation-and-pointing example, its application to trickier scenarios raises questions." *A.W.*, 229 N.E.3d at 1076 (Goff, J., concurring). Perhaps this case constitutes one of those trickier scenarios.

[30] I also note that, to the extent the offense of attempted robbery is enhanced on the basis of a serious bodily injury, the *Wadle* Court held that "an enhanced punishment, whether based on attendant circumstances or on a prior conviction, presents no 'double jeopardy issue at all.'" *Wadle*, 151 N.E.3d at 254 (quoting *Workman v. State*, 716 N.E.2d 445, 448 (Ind. 1999)). In at least two cases, this Court has construed this statement to mean that an enhancement to robbery or burglary based upon an injury does not present a double jeopardy issue. *See Kerner*, 178 N.E.3d at 1230 n.10 (addressing a defendant's argument that his convictions for murder and attempted robbery constituted a substantive double jeopardy violation and holding that "Kerner's offenses were elevated to Level 2 felonies because the attempted robbery resulted 'in serious bodily injury to any person other than a defendant.' I.C. § 35-42-5-1(a). The enhancements do not affect our double jeopardy analysis. *See Wadle*, 151 N.E.3d at 254 (recognizing that an elevation is neither a separate offense nor a conviction, and thus 'double-jeopardy analysis is simply inapposite').")); *Demby*, 203 N.E.3d at 1044, 1044 n.9 (holding that "burglary is not inherently included in either attempted murder or aggravated battery, and vice versa," and noting that, "[w]ith respect to whether the burglary conviction could be an included offense as charged, based on the elevation of the offense because of the resulting bodily injury, the *Wadle* court has already addressed the matter: ['A]n enhanced punishment, whether based on attendant circumstances

or on a prior conviction, presents no 'double jeopardy issue at all.'") (quoting *Wadle*, 151 N.E.3d at 254).[7]

[31]     I also note that Eversole only requests that this Court vacate his conviction for murder. In support of his argument, Eversole cites Ind. Code § 35-38-1-6. In *Wadle*, the Indiana Supreme Court held that "[w]hen the defendant is found guilty of both the included offense and the greater offense, the trial court may not enter judgment and sentence for the included offense," 151 N.E.3d at 255-256 (citing Ind. Code § 35-38-1-6 (2014 Repl.)), and "[t]o remedy Wadle's conviction for both offenses, then, we accept the State's proposal of vacating his Level 5 felony OWI-SBI conviction (Count III) while leaving in place his Level

---

[7] The *Wadle* Court observed:

> Indiana has long recognized the common-law principle that a "lesser included" offense is the "same" as its greater (encompassing) offense. Applying variations of this principle, this Court has declined to convict and punish a defendant in a single trial for (1) an offense and its lesser-included offense, (2) two offenses consisting of the same act, (3) one offense consisting of the same act as an element of another offense, (4) an elevation of an offense imposed for the same "behavior or harm" as another offense, and (5) a conspiracy where the overt act is the same act as another offense. *See Richardson*[ *v. State*, 717 N.E.2d 32, 55-56 (Ind. 1999)] (Sullivan, J., concurring) (citing cases). And today, we have legislation codifying these principles. *See* I.C. § 35-38-1-6 (2019) (prohibiting a trial court from entering judgment of conviction and sentence for both an offense and an "included offense"); I.C. § 35-41-5-3 (prohibiting conviction of "both a conspiracy and an attempt with respect to the same underlying crime" and prohibiting conviction of "both a crime and an attempt to commit the same crime").

*Wadle*, 151 N.E.3d at 246-247 (citations and footnote omitted). With respect to the Court's observation that it had declined to convict and punish a defendant in a single trial for "(4) an elevation of an offense imposed for the same 'behavior or harm' as another offense," *id.* at 246, and that "today, we have legislation codifying these principles," *id.* at 247, the Court did not explain how Ind. Code § 35-38-1-6 or Ind. Code § 35-31.5-2-168 preclude punishment for an elevation of an offense imposed for the same behavior or harm as another offense. There may be tension between the statement in *Wadle* that legislation codifies the principle declining "to convict and punish a defendant in a single trial for . . . an elevation of an offense imposed for the same 'behavior or harm' as another offense," *id.* at 246, and the statement in *Wadle* that "an enhanced punishment, whether based on attendant circumstances or on a prior conviction, presents no 'double jeopardy issue at all.'" *Id.* at 254 (quoting *Workman*, 716 N.E.2d at 448).

3 felony conviction for leaving the scene (Count II)." *Id.* at 256. The Court noted:

> The State argues in the alternative that we "may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the [double-jeopardy] violation." Appellee's Br. at 13 (citing *Zieman v. State*, 990 N.E.2d 53, 64 (Ind. Ct. App. 2013)). But our included-offense statute prohibits the trial court from entering judgment and sentence for the included offense when the defendant is found guilty of both the included offense and the charged offense. I.C. § 35-38-1-6. The only remedy, then, is to vacate conviction of the included offense. Simply reducing Wadle's conviction to a "less serious offense" threatens to circumvent his constitutional right to "clear notice of the charge or charges against which the State summon[ed] him to defend" at trial. *See Wright*[ *v. State*, 658 N.E.2d 563, 565 (Ind. 1995)] (citing Ind. Const. art. 1, § 13).

*Id.* at 256 n.36.

[32] Here, the majority does not discuss Ind. Code § 35-38-1-6. The majority notes that the Indiana Supreme Court "precedent does not require that the 'greater offense' be the offense with the greater penalty; rather, our Supreme Court says simply to look to which offense is 'alleged' by the appellant to have been included in the other offense." Slip op. at 6 n.2 (quoting *A.W.*, 229 N.E.3d at 1067). It also observes that "here, Eversole alleges that the murder allegation was included within the Level 2 felony allegation of attempted robbery." *Id.* Thus, the majority implies that the murder is included within the attempted robbery. However, such a holding seems problematic because, if we treat murder as the included offense as suggested by Eversole and the majority, the

foregoing language in *Wadle* appears to dictate that the murder conviction must be vacated. Vacating the murder conviction would most assuredly constitute a result neither the legislature nor the Indiana Supreme Court intended.[8] In light of the foregoing, I would affirm the trial court.

[33] While I would affirm the trial court, I also address an aspect of the majority's decision regarding the outcome. Specifically, if a substantive double jeopardy violation exists, I respectfully dissent from the majority's decision to vacate the conviction for attempted robbery as a level 2 felony without ordering that the conviction be reduced.[9] With respect to the *Wadle* Court's statement that "[s]imply reducing Wadle's conviction to a 'less serious offense' threatens to circumvent his constitutional right to 'clear notice of the charge or charges against which the State summon[ed] him to defend' at trial." 151 N.E.3d at 256

[8] On appeal, the State asserts that, "even if this Court were to find a double jeopardy violation, the remedy would not be to vacate the murder conviction as Eversole requests," and cites *Jenkins v. State*, 726 N.E.2d 268 (Ind. 2000). Appellee's Brief at 10. In *Jenkins*, the Court cited *Richardson v. State*, 717 N.E.2d 32, 54 (Ind. 1999), and held that, "[w]hen we determine that two convictions contravene double jeopardy principles, we may eliminate the violation by vacating either conviction, and we consider the penal consequences that the trial court found appropriate." *Jenkins*, 726 N.E.2d at 271 (citing *Richardson*, 717 N.E.2d at 54). To the extent the *Jenkins* Court relied upon *Richardson*, the *Wadle* Court expressly overruled the *Richardson* constitutional tests in resolving claims of substantive double jeopardy and held that, "[g]oing forward, and with a focus on statutory interpretation, we adopt an analytical framework that applies the statutory rules of double jeopardy." *Wadle*, 151 N.E.3d at 235. With the *Wadle* Court's emphasis on statutory interpretation and emphasis that Ind. Code § 35-38-1-6 "prohibits the trial court from entering judgment and sentence for the included offense when the defendant is found guilty of both the included offense and the charged offense," *Wadle*, 151 N.E.3d at 256 n.36, and the majority's indication here that murder is an included offense of attempted robbery, I cannot conclude that vacating the conviction for attempted robbery resulting in serious bodily injury as a level 2 felony strictly follows *Wadle*.

[9] I address this aspect because this Court appears to be reaching differing results. In the present case, the majority vacates the conviction for attempted robbery as a level 2 felony without entering a reduced conviction. *See* slip op. at 8. In the recent decision of *Macklin v. State*, this Court confronted a similar issue, observed that the State conceded error, reversed, and merely lowered the level of the attempted robbery conviction from a level 2 to a level 3 felony. No. 24A-CR-952, 2024 WL 5116374, at *1 n.5, *5-6.

n.36 (citing *Wright*, 658 N.E.2d at 565 (citing Ind. Const. art. 1, § 13)), in my view reducing Eversole's attempted robbery conviction to a less serious offense does not threaten to circumvent his constitutional right to clear notice of the charge or charges. Multiple levels of robbery are governed by the same statute. Ind. Code § 35-42-5-1 provides that "a person who knowingly or intentionally takes property from another person or from the presence of another person . . . (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery, a Level 5 felony," and "the offense is a Level 3 felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Level 2 felony if it results in serious bodily injury to any person other than a defendant." The charging information for Count III included all of the elements of attempted robbery as a level 2 felony but also all the elements of the lesser level felonies. *See* Appellant's Appendix Volume II at 31. Based upon the statutory language and the charging information, attempted robbery as the lesser level felonies are inherently included and factually included in attempted robbery as a level 2 felony. While I would affirm the trial court, I also write to indicate that, even assuming that a double jeopardy violation exists and assuming that Ind. Code § 35-38-1-6 does not require that we vacate the murder conviction (or vacate the attempted robbery conviction in its entirety), Eversole had clear notice of the included offense of attempted robbery as the lesser level felonies and reducing

the attempted robbery conviction would be the most appropriate and practical outcome.[10]

[34] For these reasons I respectfully dissent.

---

[10] In *Wadle*, the Court examined two offenses: "(1) leaving the scene of an accident, and (2) OWI causing serious bodily injury (or OWI-SBI)." 151 N.E.3d at 253. It observed that "[a]n 'operator of a motor vehicle' commits the first offense, a Class B misdemeanor, when he or she 'knowingly or intentionally' leaves the scene of an accident without providing the necessary information and assistance." *Id.* (quoting Ind. Code § 9-26-1-1.1(a), (b) (2015 Supp.)). "This offense becomes a Level 3 felony when, as here, the operator leaves the scene of an accident 'during or after the commission of the offense of operating while intoxicated causing serious bodily injury (IC 9-30-5-4).'" *Id.* (quoting Ind. Code § 9-26-1-1.1(b)(4)). "The second offense, OWI-SBI, occurs when a person causes serious bodily injury to another person when operating a vehicle . . . while intoxicated.'" *Id.* at 253-254 (quoting Ind. Code § 9-30-5-4(a) (2014)). "This offense rises from a Level 6 felony to a Level 5 felony if, at the time of committing the offense, the person had been convicted of OWI within the preceding five years." *Id.* at 254. The relevant version of Ind. Code § 9-30-5-4 defined the crime as a level 5 felony and did not specify a lower offense and offered no way to reduce the offense. However, Ind. Code § 9-30-5-2 provided that "a person who operates a vehicle while intoxicated commits a Class C misdemeanor" and that the offense "is a Class A misdemeanor if the person operates a vehicle in a manner that endangers a person." I struggle somewhat with why the *Wadle* Court held that "[s]imply reducing Wadle's conviction to a 'less serious offense' threatens to circumvent his constitutional right to 'clear notice of the charge or charges against which the State summon[ed] him to defend' at trial." *Wadle*, 151 N.E.3d at 256, n.36. It may be that the *Wadle* Court believed that the statute under which the second offense was charged, Ind. Code § 9-30-5-4, did not specify a lower offense and offered no way to reduce the offense, and the defendant would have had to examine a different statute, Ind. Code § 9-30-5-2, to find the classification of the lesser offenses. Nonetheless, even if the Indiana Supreme Court had reduced the second offense to a class C misdemeanor or class A misdemeanor, a double jeopardy problem may still have existed given that the first offense was elevated to a level 3 felony based upon the operator leaving the scene of an accident during or after the commission of the offense of operating while intoxicated causing serious bodily injury.